**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SANDRA SCHNAKENBURG *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | No.1:21-CV-02259 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| DONNA J. KRILICH and | ) | |
| WALTER MORGAN, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION AND ORDER**

In March of this year, Robert Krilich passed away, leaving behind what appears to be a considerable estate. Within a few weeks, two state court proceedings were underway to try to determine what should happen to that estate. The adult children from his first marriage (to then-spouse Lillian Krilich) filed a petition in state court to enforce the Kriliches' 1985 divorce judgment. R. 1-1 at 3–16, Cook County Petition.[1] Robert Krilich's widow (Donna Krilich) and an attorney (Walter Morgan) commenced a probate action in Florida, and removed the Cook County case to this federal court, premising the removal on diversity jurisdiction. R. 1, Notice of Removal. But the domestic-relations exception and the probate exception to federal diversity jurisdiction apply, so this case must be remanded to the Cook County Circuit Court.

---

[1]Citations to the record are noted as "R." followed by the docket entry.

## I. Background

In 1985, the Cook County Circuit Court (specifically the Domestic Relations Division) issued a Judgment for Dissolution of Marriage, ending the marriage of Robert and Lillian Krilich. Notice of Removal ¶ 3; R. 1-1 at 17, Exh. A. to Cook County Petition, Divorce Judgment. The judgment incorporated the ex-spouses' written "Marital Settlement Agreement." Cook County Petition ¶ 1; Divorce Judgment at 3. According to the Petitioners in this case, that Agreement decreed, among other things, that Robert Krilich must leave at least half of his estate to the children or grandchildren from his marriage with Lillian Krilich. Notice of Removal ¶ 3; Cook County Petition ¶ 4.

Fast forward over 35 years: on March 4, 2021, Robert Krilich passed away in Florida, where he had resided. Notice of Removal ¶ 4; Cook County Petition ¶ 9. The children of his first marriage (to Lillian Krilich)—Sandra Schnakenburg, Roseann Loesch, Debbie Sebek, Robin Keel, Barbara Berry, and Robert Krilich, Jr. ("the Krilich Children" for short)—sought information about their father's estate from his attorneys, but received no answers. Cook County Petition ¶ 11. For various reasons, the Krilich Children became concerned that the estate would not be divided according to the dictates of their parents' 1985 divorce judgment. *Id.* ¶¶ 6, 12–19. Their mother had already passed away years ago, back in 2008, leaving daughter Sandra as the executor of her estate. *Id.* ¶ 7. So on April 14, 2021, the Krilich Children filed a Petition to Enforce Judgment for Dissolution of Marriage in their parents' long-closed divorce case before the Circuit Court of Cook County, Domestic Relations Division.

2

Cook County Petition at 1. Sandra filed as the executor of her mother's estate and on her own behalf, while the rest of the Krilich Children filed on their own behalf and "as beneficiaries under the terms of the Marital Settlement Agreement …." *Id.* at 1. As respondents, the petition named Robert Krilich "by and through DONNA J. KRILICH and WALTER L. MORGAN, as the nominated Co-Personal Representatives of the decedent's estate …." *Id.* The Petition states its goal as follows: "Petitioners seek to enforce the terms of the Judgment and Agreement concerning the requirement that Robert leave at least 50% of his estate to the Krilich Children and grandchildren." Cook County Petition ¶ 23.

Not long after the filing of the state court petition, a probate case got underway in Florida. As noted in the Cook County Petition, Robert Krilich's will had designated his second wife, Donna Krilich, and his attorney, Walter Morgan, as the Co-Personal Representatives of Robert Krilich's Estate. Notice of Removal ¶ 4. On April 22, 2021, the Circuit Court in Broward County, Florida, issued Letters of Administration to Krilich and Morgan, empowering them "to act as personal representatives of the estate of Robert R. Krilich, SR., deceased, with full power to administer the estate according to law; to ask, demand, sue for, recover and receive the property of the decedent; to pay the debts of the decedent as far as the assets of the estate will permit and the law directs; and to make distribution of the estate according to law." Notice of Removal ¶ 5; R. 12 at 14, Letters of Administration at 1.

A few days after receiving the Letters of Administration in Florida, Krilich and Morgan removed the Cook County case to this Court. Notice of Removal. They call on

3

the Court to exercise its diversity jurisdiction. *Id.* at 1. But on review of the state court petition, the Court noted that the subject matter of the suit, and the relief sought, raised the serious prospect that the domestic-relations or probate exceptions to federal diversity jurisdiction might apply, rendering the removal to federal court improper. R. 7, Docket Entry. At the Court's request, the parties briefed the issue. The Respondents argue that the exceptions do not apply, and this Court may exercise diversity jurisdiction over the case. R. 10, Defs.' Br.; R. 12, Defs.' Reply. The Petitioners argue that diversity jurisdiction is not met, and that even if it is, both the domestic-relations exception and the probate exception apply and dictate a remand to state court. R. 11, Pets.' Resp.

## II. Analysis

### A. Diversity Jurisdiction

As a threshold issue, if not for the probate and domestic relations exceptions, this Court would have jurisdiction over this case. Removal is governed by 28 U.S.C. § 1441. Generally speaking, so long as the case could have originally been filed in federal court, the case may be removed. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 890 (7th Cir. 2013). As mentioned earlier, Krilich premises removal in this case on diversity jurisdiction. Diversity jurisdiction requires that the parties be of diverse state citizenship and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a); *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83–84 (2014).

4

The Krilich Children contend that the Respondents have not met their burden to establish that diversity jurisdiction exists in this case. Pets.' Resp. at 7. According to the Petitioners, the "true party in interest" in the case is the Estate of Robert Krilich, and not Donna Krilich and Walter Morgan. *Id*. To the Petitioners' way of thinking—but without citing any authority for the proposition—the estate's citizenship (whatever that might be) is thus the citizenship that counts. *Id*. The Petitioners proffer that the estate has Illinois citizenship, because of various business interests and real property that Robert R. Krilich owned in Illinois. *Id*. Because two of the Krilich Children are citizens of Illinois, if the Estate were also considered an Illinois citizen, there would be no diversity jurisdiction. Notice of Removal at ¶ 10.

But the federal diversity statute has a rule for situations like this—and it is not what the Petitioners have advanced. "[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the *decedent* …." 28 U.S.C. § 1332(c)(2) (emphasis added); *see also Gustafson v. zumBrunnen*, 546 F.3d 398, 400 (7th Cir. 2008). So the question is not where Robert Krilich held his assets (or some of his assets), but where he was a citizen when he passed away. The Letters of Administration say that Robert Krilich was a resident of Broward County, Florida. Letters of Administration at 1. Residency is not the same as citizenship for diversity purposes, but the Krilich Children's petition also notes that their father died in Florida in March 2021, and that they visited him at his *home* there in October 2020 for his birthday. Cook County Petition ¶¶ 9, 16. His will identifies him as a resident of Broward County Florida. R. 1-1 at 43, Exh. C to Cook County Petition, Last Will and

Testament at 1. In short, the record shows that Robert R. Krilich was a citizen of Florida—that is, where he was domiciled—so the representatives of his estate are too, at least for purposes of this case. So diversity of citizenship appears to be satisfied, and the amount in controversy appears to be well over $75,000, given the allegations of multiple real properties in the Estate. Jurisdiction thus would be secure—if not for two obstacles.

### B. Probate Exception

It is true that federal courts ordinarily have an unflagging obligation to exercise the jurisdiction conferred on them. But federal courts do not have jurisdiction to handle probate matters. *Markham v. Allen*, 326 U.S. 490, 493–94 (1946). As the Supreme Court explained in 1946, the Judiciary Act of 1789 did not grant federal courts equity jurisdiction extending to probate matters. *Id.* at 494. More recently, the Supreme Court has clarified the extent and the limits of the probate exception, which "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006). Federal courts may, however, resolve some matters ancillary to probate proceedings, because the exception "does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.* at 312. For example, a widow's claim against her son-in-law for tortiously interfering with her husband's attempt to set up a trust for her was found *not* to fall under the probate exception, because it did not require the federal court to

6

administer an estate, probate a will, or perform other pure probate functions. *Id.* The probate exception simplifies probate proceedings and avoids conflict between federal and state courts: "in situations where a state court controls the subject of a custody battle or the property in a decedent's estate, another court should not be permitted to elbow its way into such a fight, particularly because state courts are assumed to have developed a core proficiency in probate … matters." *Sykes v. Cook Cty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741 (7th Cir. 2016) (cleaned up).[2]

The probate exception squarely applies to this case. The relief the petitioners seek is the outright distribution of assets from their father's estate. Cook County Petition ¶ 23. To grant that relief, this Court would need to order the estate to transfer money or property to the Petitioners. That is the quintessential function of a state probate court.

The defense arguments to the contrary are unpersuasive. Krilich and Morgan cite only one Seventh Circuit case, and it is different from the case at hand. In *Gustafson,* the Seventh Circuit commented that a suit related to a will did not fall within the probate exception because "[t]he judgment sought would just *add* assets to the decedent's estate; it would not reallocate the estate's assets among contending claimants or otherwise interfere with the probate court's control over and administration of the estate." 546 F.3d at 400 (emphasis added). The Krilich Children are not seeking

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

to *add* assets their father's estate, and the Respondents do not say otherwise. *Gustafson* does not apply.

The Respondents also argue that this Court can issue a "judgment" as to the validity of either the Petitioners' or the defendants' claims, without ordering payment of that judgment, and that this would avoid the probate exception because the Court would not be interfering with the state courts. Defs.' Br. at 2–3; Defs.' Reply at 2–3. The Respondents' primary authority for this argument is an unpublished case from the Eleventh Circuit, *Stuart v. Hatcher*, 757 Fed. Appx. 807 (11th Cir. 2018). Given the scarcity of appellate cases addressing the probate exception, it is understandable that the parties would look to other circuits—but in this instance, the Eleventh Circuit case is not helpful for Krilich and Morgan. The Respondents here accurately describe *Stuart* as saying that a federal court can issue a judgment as to a creditor's claim against an estate, without ordering payment of that judgment. *Id.* at 809. This statement seems to authorize federal courts to issue advisory opinions, which are not permitted. *See Jones v. Griffith*, 870 F.2d 1363, 1368 (7th Cir. 1989) ("The rule against federal courts' issuing advisory opinions is part of a broader policy against unnecessary recourse to federal courts. Federal courts exist to resolve cases rather than to help people prevent their disputes from turning into cases."). It is one thing to issue a declaratory judgment that declares the rights of one party against another. It is quite another for a federal court to issue a declaratory judgment but then leave *potential* enforcement of the declaration to state court. If the enforcement is merely potential—that is, it is not binding on the state court—then the "judgment" is really an

8

advisory opinion. If the enforcement of the declaration is binding on the state court, then that would mean a federal court has indeed ordered payment from an estate. Worse, the federal court would have overridden and essentially commandeered the state probate court to do so. Indeed, without using the words "advisory opinion," the district court in *Cassens v. Cassens,* a case cited by the Petitioners, clearly understood the danger of interfering in this way. 430 F.Supp.2d 830, 837–38 (S.D. Ill. 2006) ("The Court notes that one of the traditional concerns of federal courts in applying the domestic relations exception has been to prevent spouses from playing one court system, i.e., federal or state, off against the other." (cleaned up)).

What's more, questionable as *Stuart* might be, the Eleventh Circuit's *application* of the rule in that case does not ultimately support the Respondents' position here. *Stuart* ultimately held that the probate exception *did* apply, because the federal court was being asked to valuate the estate and to decide whether the defendant had breached his fiduciary duty. *Stuart*, 757 Fed.Appx. at 809–10. The Eleventh Circuit explained: "In determining whether the probate exception applies, we look past the plaintiff's theory of relief and consider the effect a judgment would have on the jurisdiction of the probate court." *Id.* at 809 (cleaned up). To issue a judgment, the federal court would have had to perform the core functions of a state probate court, and the Eleventh Circuit decided this was not permissible. So too here. To make any decisions about who should receive how much money from the Estate of Robert R. Krilich, this court would need to valuate and to allocate that estate, infringing on the domain of the state probate court (in Florida, no less).

9

Finally, given the lack of many cases about the probate exception, it is worth noting that another circuit's case law supports applying the probate exception in this case. The court in *Stuart* cited a Fifth Circuit case that is remarkably similar to the case at hand. *See Turton v. Turton*, 644 F.2d 344 (5th Cir. 1981). In *Turton*, the plaintiff was the son of the decedent, and sued to enforce a settlement agreement about how the estate would be divided. *Id.* at 346. The Fifth Circuit first stated the same general proposition that the Eleventh Circuit later would restate in *Stuart*: "the federal court is limited to declaring the validity of the asserted claims, leaving the claimants to assert their federal judgments as res judicata in the probate court." *Id.* at 347. But, just as in *Stuart*, the Fifth Circuit concluded that in order to declare the validity of the claims, it would need to valuate the estate, which it would not do. *Id.* at 347–48. And along the way, *Turton* noted an example of when the probate exception applies: "a suit against an executor personally for malfeasance is beyond federal jurisdiction, if it requires a premature accounting of an estate still in probate." *Id.* at 348. In this case, the Krilich Children claim that the executors of their father's Estate are not being forthcoming with information about that Estate, and are not dividing it as required by their parents' separation agreement. To the extent this is a claim of malfeasance, the Fifth Circuit would categorize it as falling within the probate exception.

At bottom, the Petitioners are asking for assets from their father's estate to be distributed to them. The Respondents are asking for a declaration that they need do no such thing. All parties involved need to bring their arguments to a state probate

10

court for resolution. The probate exception to federal jurisdiction prevents this Court from hearing them.

### C. Domestic-Relations Exception

Because the probate exception so clearly applies to this case, it is not strictly necessary to decide whether the domestic-relations exception applies too—either way, the case must be remanded. But for the parties' benefit, and in case this Opinion is reviewed in some way, it makes sense to address the issue anyway.

The domestic-relations exception dates back to 1858, when the Supreme Court declared (at that time without explanation or citation) that federal courts did not have jurisdiction to hear divorce or alimony cases. *Barber v. Barber*, 62 U.S. 582, 584 (1858). After the lower courts had consistently applied the rule for over 130 years, the Court offered a more detailed rationale for the exception in *Ankenbrandt v. Richards*, 504 U.S. 689 (1992). The domestic-relations exception to federal courts' jurisdiction is not grounded in Article III, Section 2 of the Constitution, the Supreme Court explained, but in Article I, together with Article III, Section 1. *Id.* at 697. Article I gives Congress the authority to create federal courts "inferior to the supreme Court." And under Article III, Section 1, "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." The Supreme Court's cases have long held that inferior courts do not have the same jurisdiction as the Supreme Court, but only that jurisdiction that Congress vested in them. *Ankenbrandt*, 504 U.S. at 697–98. Ultimately, *Ankenbrandt* concluded that because the courts had been applying the domestic-

11

relations exception for over a century, and Congress had never instructed them to do otherwise—including when amending the diversity-jurisdiction statute in 1948—Congress had adopted the domestic-relations exception to diversity jurisdiction. *Id.* at 700–01.

The Seventh Circuit has interpreted domestic-relations exception to consist of "a core and a penumbra." *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998). At the core are cases in which plaintiffs seek "one or more of the distinctive forms of relief associated with the domestic relations jurisdiction: the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support." *Id.* In the corollary to the core are "ancillary proceedings, such as a suit for the collection of unpaid alimony, that state law would require be litigated as a tail to the original domestic relations proceeding." *Id.* The exception thus appears to encompass suits for the enforcement of domestic-relations judgments. As with the probate exception, *tort* cases that arise out of domestic disputes do not necessarily fall within the domestic-relations exception. *Id.* at 740–41. This is because both the probate and domestic-relations exceptions "are construed narrowly, with a focus on the need to prevent federal courts from disturbing or affecting the possession of property in the custody of a state court." *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) (cleaned up).

Here, however, the Krilich Children are seeking to enforce a judgment of divorce issued by the Domestic Relations Division of the Cook County Circuit Court. This is not a tort case, or some other case indirectly related to a domestic relations

12

case. Indeed, the Petitioners filed their petition in their parents' *divorce* case. The next step for the Circuit Court of Cook County probably will be to decide whether enforcement of the divorce judgment can proceed, and if so, the state court will likely move on to interpreting the divorce judgment. Indeed, in their reply brief, the Respondents argue that the divorce decree cannot be enforced because its original participants are both deceased, and that the Separation Agreement does not mean what the Krilich Children say it means. Defs.' Reply at 3–6. But these arguments only serve to highlight that the Respondents are asking this federal court to refuse to give effect to the divorce judgment or to interpret—and potentially invalidate—a divorce decree issued by a state domestic-relations court.

All of the cases that the Respondents cite are distinguishable from this case. In the cited cases, the Seventh Circuit has held that when a party brings a *tort* claim that is tangentially related to a domestic-relations dispute, the exception does not apply. *See Friedlander*, 149 F.3d at 740–41 (claims for intentional infliction of emotional distress and other torts did not trigger the exception); *Lloyd v. Loeffler*, 694 F.2d 489, 492–83 (7th Cir. 1982) (exception did not apply to tortious interference with custody suit); *Kowalski*, 893 F.3d at 995 (exception did not apply to husband's claims against judges and sheriff's personnel for prejudicing him in his divorce proceeding); *Sheetz v. Norwood*, 608 Fed. Appx. 401, 404 (7th Cir. 2015) (lawsuit against government authorities for failing to protect plaintiff from abuse by his father did not implicate domestic-relations exception because plaintiff could pursue his claims without asking the court to set aside the custody order that originally sent him to his father).

13

The Krilich Children bring no tort claims against their father's estate. None of those Seventh Circuit cases suggests that the domestic-relations exception is inapplicable to the Krilich Children's attempt to enforce their interpretation of their parents' divorce decree.

Other circuits' interpretations of the domestic-relations exception lend further support to the Petitioners' position. The Sixth Circuit has held, relatively recently, that "the domestic-relations exception deprives federal courts of diversity jurisdiction if the plaintiff seeks to modify or interpret the terms of an existing divorce, alimony, or child-custody decree." *Chevalier v. Estate of Barnhart*¸ 803 F.3d 789, 795 (6th Cir. 2015). The Sixth Circuit further urges that the correct focus, when the domestic-relations exception is invoked, is "the remedy that the plaintiff seeks: Does the plaintiff seek an issuance or modification or enforcement of a divorce, alimony, or child-custody decree?" *Id.* at 797. Under this rule, the domestic-relations exception applies to this case even more obviously, because the Petitioners outright seek the enforcement of their parents' divorce decree.

Just this year, the Ninth Circuit also revisited the domestic-relations exception, and again, its reasoning is in line with this Court's interpretation. The Ninth Circuit applied the exception to a case in which a woman sued her ex-husband, his son, and his son's company for allegedly failing to repay her for loans the couple had made to the company while they were still married. *Bailey v. MacFarland*, 5 F.4th 1092, 1094 (9th Cir. 2021). The divorce decree had stipulated that the shares of the company were marital property, and that any income from it would be equally divided

14

between the two. *Id.* Noting that a "plaintiff may not evade the exception through artful pleading[,]" the Ninth Circuit concluded that because Bailey (the plaintiff) wanted the federal court to determine if assets had been acquired and held by the defendant during their marriage, and thus should have been divided with Bailey, the case was "at the core of the domestic relations exception." *Id.* at 1097. *Bailey* explicitly disavowed the "broad version of the exception embraced by some of our sister circuits," including by the Seventh Circuit in *Friedlander*. *Id.* Yet even with a narrower interpretation of the exception, *Bailey* held that "[t]he domestic relations exception squarely foreclose[d] diversity jurisdiction" over the case. *Id.* Like Bailey, the Krilich Children are asking for a court to decide what property of their deceased father should be distributed to them in accordance with the divorce decree. If the Ninth Circuit's narrow conception of the domestic-relations exception would preclude a federal court from hearing such a case, the Seventh Circuit's broader conception of it would certainly do the same. The Petitioners were correct to file this action in state court to begin with, and there the case must return.

15

## III. Conclusion

For the reasons discussed in this Opinion, this case is remanded forthwith to the Circuit Court of Cook County. The tracking status hearing of December 17, 2021, is vacated.

ENTERED:


      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 29, 2021